IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STACCATO O. RICKS,

      Plaintiff,

v.                                                                                                          No. 1:21-cv-00942-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

      Before the Court is Plaintiff Staccato O. Ricks's Motion to Reverse or Remand Administrative Agency Decision with Supporting Memorandum. [Doc. 20]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Ricks's challenge to the Commissioner's Final Decision on his application for Social Security benefits and entering Final Judgment in this appeal. [Docs. 9, 23, 26].[1] Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court grants Ricks's motion, reverses the Commissioner's Final Decision denying benefits, and remands this case to the agency for rehearing.

**I.   INTRODUCTION**

      Administrative Law Judges ("ALJs") in the Social Security Administration must use a five-step sequential analysis to determine whether someone is disabled. Steps two and three require a broad assessment of the claimant's ability to work while steps four and five require a more specific assessment. ALJs are required to explain their findings at each of those steps. This case is about what the law requires when an ALJ's findings at steps two and three appear

---

[1] Documents 9, 23, and 26 are text-only docket entries viewable on the CM/ECF system.

inconsistent with the findings necessary for steps four and five and what kinds of explanations the ALJ must give to account for those differences.

The Court finds that the ALJ in this case inconsistently found a moderate mental limitation at step three and failed to explain why the claimant did not need to be meaningfully restricted in that capacity at step four. This violates the Administration's regulations and requires remand. A moderate mental limitation at step three does not necessarily require a specific corresponding limitation in the claimant's residual functional capacity, but without one, the ALJ must cite specific evidence to explain why the residual functional capacity she found is appropriate. Failure to do so in this case was error.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Staccato O. Ricks protectively applied for supplemental security income benefits under Title XVI of the Social Security Act in 2018. *AR* at 964.[2] He initially claimed disability beginning in 2014, but later amended his onset date to April 2, 2020. *AR* at 382, 964. Ricks stated in his application that he was disabled due to post-traumatic stress disorder, depression, a lower back injury, and anxiety. *AR* at 998. His application was denied initially and on reconsideration. *AR* at 823, 839. Ricks was then granted a hearing before ALJ Melinda W. Kirkpatrick.[3] *AR* at 375–412, 874, 911.

Mental health was a prominent topic of the agency proceedings. During his hearing, Ricks testified that he was "dealing with some major depression," experienced poor memory, and thought about hurting himself. *AR* at 393–95. He said that he sought treatment but took his medications inconsistently because the pill regimen confused him and he did not always have

---

[2] Document 19 comprises the sealed Certified Transcript of the Administrative Record. The Court cites the Record's internal pagination rather than the CM/ECF document number and page.
[3] Ricks also had a hearing before ALJ Kirkpatrick in 2020 during which she heard no evidence. *See AR* at 535–43. Ricks did not have a lawyer, so ALJ Kirkpatrick continued the hearing so he could retain one. *AR* at 541–42.

health insurance. *AR* at 394–96. Ricks also described seeing psychiatrists on-and-off and checking into behavioral health centers to address substance abuse problems. *AR* at 397–400, 403. Medical records support Ricks's statements. From 2017 to 2022, Ricks was admitted three times for psychiatric inpatient care. *See AR* at 547, 1191, 1242.[4] Records show that Ricks reported depression, suicidal ideation, alcohol abuse, and auditory hallucinations during his first two admissions. *AR* at 731, 1191. Ricks also described poor concentration and "racing thoughts" to his inpatient treatment providers. *AR* at 731, 1194. Haven Behavioral Senior Care records from 2018 show that Ricks's attention and concentration abilities fluctuated. *See generally AR* at 1191–1225 (discharge summary and psychiatric progress notes from inpatient treatment). For example, mental examination notes from June 8, the day after Ricks was admitted, say that his attention and concentration were "[i]mproving since yesterday," although "patient is still having trouble retrieving pieces of stories that [he] wishes to relay." *AR* at 1200. On June 19, however, "attention and concentration are severely impaired[.]" *AR* at 1217. Then, in his discharge summary of June 25, Ricks's "[a]ttention and concentration are normal." *AR* at 1191.

On January 27, 2021, Ricks appeared for his hearing. *AR* at 375. After hearing the evidence, ALJ Kirkpatrick denied benefits. *AR* at 359. Ricks sought relief from the Appeals Council, which denied review and made ALJ Kirkpatrick's decision final.[5] *AR* at 2. Ricks then timely appealed. [Doc. 1]. His case was assigned to me and the parties consented to my presiding. [Docs. 3, 9, 23, 26]. On May 5, 2022, Ricks moved to reverse the Commissioner's

---

[4] Although medical records detail Ricks's first two admissions, his third psychiatric inpatient care admission is evidenced only by a letter from the Bernalillo County Department of Behavioral Health Services. *See AR* at 1242.
[5] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court. *See* 42 U.S.C. § 405(g). Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review. 20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

decision and remand this case for rehearing. [Doc. 20]. Briefing was completed on July 21, 2022. [Docs. 22, 24, 25].

**III.    THE COMMISSIONER'S FINAL DECISION**

Claimants seeking disability benefits must establish that they are unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[6]

At step one, ALJ Kirkpatrick found that Ricks had not engaged in substantial gainful activity since he applied for benefits. *AR* at 364. At step two, she found that Ricks had the following severe impairments: degenerative joint disease/osteoarthritis of the left knee, degenerative disc disease of the lumbar spine at L5–S1, chronic pain syndrome, obstructive sleep apnea, obesity, depression, anxiety, post-traumatic stress disorder, and a history of alcohol abuse disorder. *AR* at 364. At step three, ALJ Kirkpatrick found that Ricks's impairments, individually and in combination, do not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P ("*Appendix 1*"). *AR* at 365. Applying the paragraph B criteria, however, she found that Ricks is moderately limited in his ability to concentrate, persist, or maintain pace.[7] *AR* at 366.

---

[6] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

[7] The term "paragraph B criteria" comes from the structure of Appendix 1. Each listed mental disorder in Appendix 1 has two or three paragraphs of listed criteria; satisfaction of at least two paragraphs typically means the claimant is disabled *per se* under that listing. *See Appendix 1* at 12.00(A)(2). The paragraphs are labeled A, B, and C. *Id.* Paragraph B always lists the same four categories of mental functioning and states that an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning" will satisfy that paragraph. *Id.* Those areas of mental functioning are thus called the "paragraph B criteria."

When a claimant has severe impairments which do not meet or equal any listed impairment, the ALJ must determine that claimant's residual functional capacity. 20 C.F.R. § 416.920(e). Residual functional capacity is a multidimensional description of the work-related abilities of a claimant despite his impairments. *Id.* at § 416.945(a)(1). It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p at *Definition of RFC* (emphasis in original).[8] ALJ Kirkpatrick found that Ricks could:

> . . . perform medium work as defined in 20 CFR 416.967(c) in that [he] can lift and carry up to 50 pounds occasionally, 25 pounds frequently. He can stand and/or walk in combination for a total of six hours out of an 8-hour workday and he can sit for a total of six hours out of an 8-hour workday; occasional climbing of ladders, ropes and scaffolds; frequent climbing of ramps and stairs; and frequent[ly] balance, stoop, kneel, crouch, and crawl. No exposure to unprotected heights or to hazardous, moving machinery. This individual has psychological limitations but [he] can understand, remember, and carry out detailed but not complex instructions[; he] can make work related decisions, *attend and concentrate for extended periods of up to two-hour intervals*, interact appropriately with the public, coworkers, and supervisors, and [he] can respond to changes in a routine work setting.

*AR* at 366 (emphasis added). ALJ Kirkpatrick stated she made these findings after considering all of Ricks's symptoms and the consistency of those symptoms with all record evidence as required by 20 C.F.R. §§ 416.920c, 416.929, and SSR 16-3p. *AR* at 367. In her narrative discussion of the evidence, ALJ Kirkpatrick detailed Ricks's alleged psychological symptoms and found that his impairments "could reasonably be expected to cause the alleged symptoms," but "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *AR* at 367–68. She then discussed that evidence, mentioning that "[a]ttention and concentration were normal" according

---

[8] All SSRs can be accessed free of charge at https://www.ssa.gov/OP_Home/rulings/rulings.html. Pin citations to SSRs refer to headings in the SSR because the Administration does not paginate its rulings.

5

to Ricks's discharge summary from Haven Behavioral. *AR* at 368. She also generally found that "mental health symptoms improved with treatment." *AR* at 369. Finally, at step four, ALJ Kirkpatrick found that Ricks's residual functional capacity allowed him to return to work as an airport utility worker and that he thus is not disabled. *AR* at 369–70.

## IV.  STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See id.*; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## V.  PARTIES' ARGUMENTS

As his sole ground for reversal and remand, Ricks argues that ALJ Kirkpatrick erred by failing to reconcile her paragraph B findings at steps two and three with her residual functional capacity findings.[9] Ricks points out that that ALJ Kirkpatrick found Ricks moderately impaired

---

[9] Ricks asserts that the error is a discrepancy between step two findings and the residual functional capacity. [*See* Doc. 20, p. 1]. Although severity is considered at both steps two and three, the error Ricks describes involving the psychiatric review technique and rating areas of mental functioning is most relevant to step three, where the paragraph B criteria must be evaluated to determine if the claimant is disabled *per se*. *See* 20 C.F.R. § 416.920(a)(4)(iii); *Appendix 1* at 12.00(A)(2)(b) (describing the paragraph B criteria). The Court thus discusses the argument primarily in terms of the relationship between step three and the residual functional capacity.

in his ability to concentrate, persist, and maintain pace, and mildly impaired in all other paragraph B functioning areas at step three. [Doc. 20, p. 8]; *AR* at 365–66.  But Ricks's residual functional capacity, as determined by the ALJ, "omits any limitation related to the mild areas of functioning, and fails to incorporate the moderate limitation[.]" [Doc. 20, p. 8].  Citing regulations, SSRs, and cases which suggest step three findings must at least impact a claimant's residual functional capacity, Ricks argues this discrepancy is reversible error which requires remand.  *See id.* at 8–14.

The Commissioner disagrees.  In her view, the real issue is whether substantial evidence supports ALJ Kirkpatrick's residual functional capacity findings, and she asserts it does. [Doc. 22, p. 5].  She points out that ALJ Kirkpatrick cited specific record evidence to support her mental residual functional capacity findings, including the discharge summary stating that Ricks had "intact attention, concentration, and memory[.]" *Id.* (citing *AR* at 1191–92).  Ricks's arguments about the discrepancies between step three findings and the residual functional capacity, she says, are "narrow, technical arguments" which interpret moderate limitations as "an inability to perform that activity[.]" *Id.* at 6.  She thus argues that the Court should disregard Ricks's arguments and affirm the Commissioner's final decision.

VI.   **ISSUE PRESENTED**

The only issue presented for review is whether ALJ Kirkpatrick reversibly erred by failing to reconcile her paragraph B findings at step three with her mental residual functional capacity findings.

VII.  **ANALYSIS**

Ricks is correct that ALJ Kirkpatrick erred by failing to reconcile her paragraph B analysis with her mental residual functional capacity findings.  A moderate limitation at step

three does not necessarily mean the claimant is unable to perform acts which draw on that capacity, but it cannot be meaningless either.  The error cannot be found harmless, so the case is reversed and remanded for rehearing.

   a. <u>Moderate Mental Limitations and Residual Functional Capacity</u>

     i. *Relevant Law*

ALJ Kirkpatrick's error arises from the relationship between mental impairment severity findings at step three and mental residual functional capacity findings.  As described above, the agency determines the severity of a claimant's impairments at step three to determine whether the claimant's symptoms meet or equal the criteria for an impairment listed in Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If a claimant's symptoms meet or equal a listing, he is disabled *per se* under the Social Security Act.  *Id.*  ALJs evaluate mental impairments at step three by rating the claimant's limitations attributable to his mental impairments on a five-point scale (none, mild, moderate, marked, or extreme) across four broad categories of mental functioning called the paragraph B criteria.  *See Appendix 1* at 12.00(E) (listing the criteria).  This analysis is called the "special technique" or the "psychiatric review technique" and the ALJ applying it must consider all evidence of mental impairments to determine the severity of limitations in each functional category.  *See id.* at 12.00(F)(3)(a); Programs Operations Manual System ("POMS") DI 24583.005(A).

Generally, an impairment that causes no functional limitations or only mild functional limitations is not severe.  20 C.F.R. § 416.920a(d)(1).  On the other end of the scale, an extreme limitation in one category or marked limitations in two or more categories makes it possible for a claimant to satisfy a listed mental impairment if other criteria are also met.  *Appendix 1* at 12.00(A)(2)(b).  Meanwhile, a moderate limitation means that the claimant's "functioning in this

area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* at 12.00(F)(2)(c). Moderate limitations in any category can be severe, but are not severe enough on their own to make the claimant disabled *per se*. *See Morgan v. Astrue*, 302 F. App'x 786, 788–89 (10th Cir. 2008) (unpublished) (affirming an ALJ's decision to deny benefits where the ALJ found severe mental impairments at step two and found moderate limitations caused by those impairments at step three but ultimately found the claimant not disabled).

Mental residual functional capacity findings at step four are similar to mental impairment severity findings at step three. At step four, the ALJ must consider the nature and extent of a claimant's mental limitations based on all relevant evidence. 20 C.F.R. §§ 416.945(a)(3), (c). Although the psychiatric review technique findings from step three are not a residual functional capacity, the same paragraph B criteria are considered, just in greater detail and by itemizing functions contained within the paragraph B categories. *See* SSR 96-8p at *The psychiatric review technique*. Residual functional capacity findings must also be supported by a narrative discussion illustrating how evidence supports each finding. *Id.* at *Narrative Discussion Requirements*. The primary difference between severity findings and residual functional capacity findings, then, is the specificity of the findings required. This makes sense given how step three differs from steps four and five – step three considers impairment severity broadly to determine whether a claimant is disabled *per se* while steps four and five consider the particular physical and mental capacities of the claimant and compare them to the requirements of specific jobs (past relevant work and jobs in the Dictionary of Occupational Titles). *See Kerekes v. Kijakazi*, 1:21-cv-00247, 2022 WL 4129400 at *3 (D.N.M. Sept. 12, 2022) (M.J. Wormuth) (unreported).

The analytical similarities and overlap of evidence considered at these steps thus require their findings to be, if not facially consistent, reconcilable. A moderate limitation at step three cannot be meaningless to the residual functional capacity. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). ALJs must provide reasoning and specific evidence for each finding and the Court must be able to determine from that reasoning whether correct legal principles were followed. 42 U.S.C. § 405(g); *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). When the Court cannot follow the ALJ's reasoning, it is not sufficient. *See Keyes-Zachary*, 695 F.3d at 1166. Unexplained, apparent inconsistencies in an ALJ's reasoning thus preclude meaningful review and are error.

      ii.  *Application*

ALJ Kirkpatrick's step three severity findings and her mental residual functional capacity findings are facially inconsistent, and she fails to reconcile those inconsistencies. This failure was error.

As discussed above, ALJ Kirkpatrick found at step three that Ricks is moderately limited in his ability to concentrate, persist, and maintain pace. *AR* at 366. The only evidence she cited to support this finding were medical records from Ricks's stay at Haven Behavioral. *See AR* at 366. Although a moderate limitation does not negate all capacity for concentration, persistence, or maintaining pace, it does suggest a significant limitation in this capacity. Then, ALJ Kirkpatrick found that Ricks can "attend and concentrate for extended periods of up to two-hour intervals[.]" *AR* at 366. In her narrative discussion of Ricks's residual functional capacity, ALJ Kirkpatrick relies on the same records from Haven Behavioral to make this finding, noting that Ricks's "[a]ttention and concentration were normal" on discharge and that Ricks has "a history of mental health symptoms that improved with treatment." *AR* at 368–69. But for purposes of

10

disability determinations, a "limitation" to two hours of attention and concentration is effectively no limitation because all jobs require workers to maintain attention and concentration for two hours at a time.  *See* POMS DI 25020.010(B)(2)(a), (3)(d), (4)(a) (describing attentional requirements for work at all skill levels).  Relying on the same records to find a moderate limitation at one step and no limitation at the next is a plain inconsistency and ALJ Kirkpatrick's reasoning does not reconcile or explain it.  The Court thus cannot follow the ALJ's reasoning.

The Commissioner argues, without persuasion, that ALJ Kirkpatrick accounted for Ricks's moderate limitation and supported her residual functional capacity findings with substantial evidence.  She points out that the definition of a moderate limitation does not "equate to an inability to perform that activity," [Doc. 22, p. 6], but the Court is not requiring that equivalence, but instead recognizing moderate limitations as more than mild and less than marked, suggesting a significant effect on the claimant's residual functional capacity.  Second, the Commissioner says that ALJ Kirkpatrick's finding that Ricks can follow "detailed but not complex instructions" is a good enough limitation to account for Ricks's attentional limitations.  *Id.* at 6–7.  But even if it partially accounts for those limits, it does not explain the more obvious conflict between moderate attentional limitations at step three and no meaningful limit on Ricks's ability to attend and concentrate in the residual functional capacity.  The Court thus rejects the Commissioner's arguments and concludes that ALJ Kirkpatrick erred.

      b.  <u>Error was Not Harmless</u>

The Administration's legal error, in the context of appeals under 42 U.S.C. § 405(g), is harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005).  The Court cannot find ALJ Kirkpatrick's

error harmless. Had she adequately considered the effect of a moderate limitation on Ricks's ability to attend and concentrate and the precise ways in which his mental limitations might affect him in the workplace, ALJ Kirkpatrick may have found that Ricks could not attend to and concentrate on work tasks for the minimum two hours necessary to perform work at any skill level. This would have required ALJ Kirkpatrick to find Ricks disabled. The Court thus remands the case for rehearing and reconsideration.

## VIII.   CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED** that Plaintiff Staccato O. Ricks's Motion to Reverse and Remand, [Doc. 20], is **GRANTED,** the Commissioner's Final Decision in this case is **REVERSED,** and the case is **REMANDED** to the Administration for proceedings consistent with this order.

Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent